**Peter Eidenberg, OSB #075778**
peidenberg@keatingjones.com
**Kelly Huedepohl, OSB #133896**
khuedepohl@keatingjones.com
Keating Jones Hughes PC
One SW Columbia St, Suite 800
Portland, OR 97258-2095
Phone: (503) 222-9955
Fax: (503) 796-0699
Of Attorneys for Defendants Cascade Capital, LLC
and Gordon Aylworth & Tami, P.C.

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| MICHAEL KAISER and MARGARET J. LOEWEN, on behalf of themselves and others similarly situated,<br><br>                        Plaintiffs,<br><br>      v.<br><br>CASCADE CAPITAL LLC, and GORDON AYLWORTH & TAMI P.C.,<br><br>                Defendants. | Case No. 3:16-cv-00744-AC<br><br>**DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF MARGARET LOEWEN'S CLAIMS**<br><br>By Cascade Capital, LLC and Gordon Aylworth & Tami, P.C.<br><br>**ORAL ARGUMENT REQUESTED** |

### LR 7-1 Certification

Counsel for defendants Cascade Capital LLC ("Cascade") and Gordon, Aylworth &

Tami, P.C. ("GAT") conferred with plaintiff's counsel Bret Knewtson about these motions on

July 13, 2016 and on August 30, 2016. The parties were unable to agree on the issues raised

herein, and require the Court's assistance to resolve them.

### Motions

Defendants move the Court to dismiss plaintiff Margaret J. Loewen's claims in their

entirety. First, the Court should dismiss Ms. Loewen's claims for lack of jurisdiction because

she lacks standing.  Second, the Court should dismiss Ms. Loewen's claims for failure to state a claim upon which relief can be granted.  In the alternative, defendants move the Court to order Ms. Loewen to make her claims more definite and certain, and to strike paragraph 18 of the Amended Complaint.

## Introduction

Plaintiffs' Amended Complaint claims that defendant GAT sent individual plaintiffs Margaret J. Loewen and Michael Kaiser collection letters threatening litigation on their debts more than four years after each had defaulted on their respective debts.  The Amended Complaint also asserts that defendants subsequently sued each plaintiff.  Plaintiffs claim that at the time the letters were sent and the lawsuits were filed, the statutes of limitations for each debt had expired.  According to the Amended Complaint, it is a violation of the FDCPA to collect on a time-barred debt.

Ms. Loewen does not assert any legally cognizable harm resulted from defendants' alleged conduct.  Ms. Loewen asserts she experienced anxiety, concern, and anger as a result of defendants' alleged conduct.  There is no allegation from which it can be inferred that any of these emotions were serious, debilitating, or caused by any egregious conduct.  Ms. Loewen fails to plead any injury that the law recognizes as sufficient to form the basis of a lawsuit and, therefore, she lacks standing to assert her claims.  Because the Court only has jurisdiction over plaintiffs with Constitutional standing, Ms. Loewen's claims must be dismissed.

In addition, Ms. Loewen fails to state a claim upon which relief can be granted.  The FDCPA does not prohibit debt collectors from filing cases to collect on debt where there is a good-faith basis that the claims will prevail.  The Amended Complaint alleges no fact stating or implying that there was no good faith basis to assert that the statute of limitations had not yet expired on plaintiff's debt.  As a result, plaintiff has failed to state a claim under the FDCPA, and her claims against defendants should be dismissed.

**DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF
LOEWEN'S CLAIMS -** Page 2
3:16-cv-00744-AC

Doc No. -902138

## Points and Authorities

**I.    The Court should dismiss Ms. Loewen's claims because she lacks standing to**

**bring them.**

Ms. Loewen has failed to plead facts sufficient to establish that she has standing to bring her claims.    As a result, Ms. Loewen's claims must be dismissed.

Ms. Loewen alleges, in pertinent part:

1.  "Sometime before January 31, 2010," she defaulted on a debt she owed, Am. Compl. ¶ 16;

2.  More than four years after she defaulted on her debt, GAT sent her a letter on behalf of Cascade to collect on the debt (the "August 3 Letter"), Am. Compl. ¶ 17;

3.  The August 3 Letter caused Ms. Loewen concern and anxiety because she was unaware that her income was protected from garnishment by federal law, Am. Compl. ¶ 17;

4.  After Ms. Loewen called GAT in response to the August 3 Letter, GAT sent Ms. Loewen a "packet of papers" to validate her debt, Am. Compl. ¶¶ 17–18;

5.  On October 29, 2015, defendants filed a lawsuit against Ms. Loewen to collect on her defaulted debt, Am. Compl. ¶ 19 (the "Loewen Collection Suit");

6.  The Loewen Collection Suit caused Ms. Loewen to become "concerned that defendants were serious about collecting the debt," Am. Compl. ¶ 19;

7.  In the course of investigating whether she should file for bankruptcy, Ms. Loewen learned it was unnecessary because she was "judgment proof," Am. Compl. ¶ 19;

8.  Ms. Loewen's attorney, Mr. Gear, contacted defendants on or around December 21, 2015, and on February 25, 2016, the Loewen Collection Suit was dismissed, Am. Compl. ¶ 19;

9.  Ms. Loewen experienced anxiety after the lawsuit was filed, Am. Compl. ¶ 20; and

10. After Ms. Loewen learned (from an unidentified individual) that the Loewen Collection Suit should not have been filed, Ms. Loewen felt anger, felt taken advantage of, and felt the lawsuit was "harassing, unfair, deceptive, and an abuse of the legal system." Am. Compl. ¶ 20.

**1.    Legal standard**

The party invoking federal jurisdiction bears the burden of establishing the elements of standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351

(1992).  To establish Article III standing, the plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, ___ U.S. ___, ___, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016).  At the pleading stage, the plaintiff must clearly allege facts demonstrating each element necessary to support standing. *Id.*  If the plaintiff fails to allege facts sufficient to support standing, the action must be dismissed for lack of subject matter jurisdiction.  *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011); U.S. Const. Art. 3, § 2, cl. 1; Fed. R. Civ. P. 12(b)(1).

**2.  Ms. Loewen fails to allege that she suffered a legally cognizable injury in fact.**

The Supreme Court of the United States recently confirmed that an individual does not have standing to assert a claim based on a purely technical violation of a federal statute – even a statute that allows for the recovery of statutory damages – if the consumer did not suffer any legally cognizable injury from the violation.  *Spokeo*, 136 S. Ct. 1540.  Defendants argue in Sections 3 and 4 *infra* that Ms. Loewen fails to establish any violation of the FDCPA.  Setting that issue aside for the moment, even if an FDCPA violation did occur, Ms. Loewen does not have standing to assert any claims because she did not suffer an injury-in-fact from defendants' alleged misconduct.

The plaintiff in *Spokeo*, Mr. Robbins, alleged that defendant Spokeo was a "consumer reporting agency" under the Fair Credit Reporting Act (FCRA), and was, therefore, under a legal obligation to comply with numerous requirements to ensure the accuracy of information it provided about individuals.  *Id.*  136 S. Ct. at 1546.  According to Mr. Robbins, he accessed his *Spokeo* profile and discovered that it contained multiple inaccuracies.  *Id.*  Mr. Robbins filed a class action claiming that *Spokeo* willfully failed to comply with the FCRA.  *Id.*

The District Court dismissed Mr. Robbins's complaint for lack of jurisdiction because Mr. Robbins had not properly pled any injury in fact, and thus did not meet the minimum

standing requriements imposed by Article III of the United States Constitution.  *Id.*  On appeal, the Ninth Circuit reversed the trial court based, in part, on Circuit precedent that "the violation of a statutory right is usually a sufficient injury in fact to confer standing."  *Id.* (quoting *Robbins v. Spokeo, Inc.*, 742 F.3d 409, 412 (2014)).  The Ninth Circuit then held that the alleged violation of statutory rights in which Mr. Robbins had a valid personal interest, rather than a violation of other individuals' rights or the violation of a collective right, was sufficient to satisfy the injury-in-fact requirement of Article III.  *Spokeo*, 136 S. Ct. at 1546.

On appeal, the Supreme Court reiterated that the "irreducible constitutional minimum" needed to meet the Constitution's standing requirements consists of three elements: The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.  *Id.* at 1547 (citing *Lujan*, 504 U.S. at 560).  The asserted injury in fact must be both "concrete" and "particularized."  *Id.* at 1548.

The standing elements are an essential part of any claim.  Congress may not abrogate or eliminate the requirements of Article III standing.  *Id.* at 1547–48.  The plaintiff bears the burden of establishing each element of the standing requirements, and must "clearly allege facts demonstrating each element."  *Id.*  (Internal quotation marks and ellipses omitted).

The Supreme Court recognized that, under some circumstances, Congress can elevate intangible harms to the status of injuries-in-fact even where the harms would not traditionally have provided the basis for a lawsuit under the common law.  *Id.* at 1549.  For example, under some circumstances Congress can allow the risk of harm to rise to the level of an injury-in-fact, particularly if the actual harm may be difficult to prove or measure, such as in the case of slander *per se*.  *Id.*  Similarly, the inability to enforce a right granted by Congress, such as the inability to obtain information subject to disclosure under federal law, may also qualify as an injury-in-fact

for purposes of standing. *Id.* at 1549–50. In the latter case, the violation of the statute also satisfies the cognizable-injury requirement.

Here, plaintiff does not allege any facts to support a tangible injury, such as economic damages. Plaintiff also fails to allege facts to support the type of intangible injury that rises to the level of a legally-cognizable harm. In the first place, there is no allegation in the Amended Complaint Ms. Loewen is a risk of being subjected to a future lawsuit to collect on her defaulted debt. Second, Ms. Loewen identifies no legal right she was unable to exercise as a result of defendants' alleged actions. Finally, she does not allege any facts to support a harm that is analogous to the types of harms Congress may elevate to cognizable claims.

To have standing to bring a claim, Ms. Loewen must allege that she suffered a concrete and particularized injury that resulted from defendants' alleged conduct. *Spokeo,* 136 S. Ct. at 1547. Here, Ms. Loewen's claims amount to an allegation that defendants acted in precisely the manner the FDCPA seeks to encourage. Pursuant to a good-faith argument that Oregon's six-year statute of limitations should govern Ms. Loewen's account, *see* section II.3 *infra*, GAT sent Ms. Loewen a letter seeking to collect a debt on which Ms. Loewen acknowledges she defaulted. When Ms. Loewen called GAT regarding her debt, GAT sent Ms. Loewen information to verify the debt. Subsequently, defendants sought redress for Ms. Loewen's nonpayment through the Oregon courts – the precise forum designated by the State's Constitution for the resolution of citizen disputes. *See* Oregon Constitution Bill of Rights, §§ 10, 17, 20.

There is no allegation that defendants at any time subjected Ms. Loewen to abusive language, threatened to harm or humiliate her, showed up at her home or place of work, took action to tarnish her reputation in the community, called her relentlessly or at inconvenient times, or took any of the other abusive, harassing actions that the FDCPA was designed to prevent. *See* 15 U.S.C. § 1692, *Statement of findings and declaration of purpose*. There is no allegation of

fact to support an inference that the lawsuit was filed in the face of clearly-controlling law barring the claim.  It bears repeating – the conduct Ms. Loewen complains of is not only a legal method to resolve disputes in the State of Oregon, it is the state-sanctioned method of resolving disputes enshrined as a fundamental right in the constitution of Oregon as well as in the federal constitution. U.S. Constitution First Amendment, Seventh Amendment; Oregon Constitution Bill of Rights, §§ 10, 17, 20.

The only allegation Ms. Loewen makes about defendants' conduct after the Loewen Collection Suit was filed is that, after her attorney contacted defendants, the suit against her was dismissed.

In *Spokeo*, the Supreme Court instructed courts to look to the common law and to the historical underpinnings of the concepts of a legal injury when evaluating standing.  136 S. Ct. at 1549.  There is no historical legal basis for Ms. Loewen to assert an "injury" based on her "concern," "anxiety," or "anger."  In keeping with *Spokeo*'s mandate to consider the historical basis for the "injury" plaintiff claims confers standing, an analysis of the right to recover for emotional distress is necessary.

In Oregon, the well-established rule is that, in the absence of any physical injury, the plaintiff must demonstrate: (1) either defendants' intent to engage in egregious conduct that is likely to cause severe emotional distress, or that defendants' owed plaintiff a special duty to guard against the her emotional distress; *and* (2) that the plaintiff actually experienced "severe" or "grave" emotional distress. *See Hammond v. Cent. Lane Commc'ns Ctr.*, 312 Or. 17, 27, 816 P.2d 593, 598 (1991).  Plaintiff has failed to plead facts in support of either element here.

First, to recover for emotional distress damages in the absence of a physical injury, a plaintiff must plead and prove that defendants engaged in conduct that was extreme, outrageous, or beyond the bounds of socially tolerable conduct. *Delaney v. Clifton,* 180 Or App 119, 129 (2002).  Plaintiff has not pleaded any such facts here.  Alternatively, a plaintiff may prove that,

beyond the general duty to avoid foreseeable harm to others, defendant owed plaintiff <u>a specific duty to guard plaintiff from emotional distress</u>.

The nuance of the duty that can give rise to a claim for emotional damages in the absence of egregious conduct is important. Even in the context of a "special relationship" or where a defendant owes a plaintiff a statutory duty beyond the general duty to avoid foreseeable harm to others, the plaintiff must show that the duty specifically required the defendant to guard the plaintiff from emotional distress caused by the complained of conduct:

> It is always foreseeable that some emotional harm might result from the negligent performance of real estate professional services, as it might from legal, accounting, or other varieties of professional malpractice. That possibility, however, cannot give rise to emotional distress damages <u>unless a standard of care that includes the duty to protect a client from emotional harm governs the professional's conduct</u>.

*Rathgeber v. James Hemenway, Inc*., 335 Or. 404, 418, 69 P.3d 710, 718 (2003) (emphasis added). The *Rathberger* court then held that the plaintiff in that case had not plead such a duty, and "the trial court erred in denying defendants' motion to strike plaintiff's request for emotional distress damages." *Id.*

That rule was confirmed and further explained in *Shin v. Sunriver Preparatory Sch., Inc.*, 199 Or. App. 352, 369, 111 P.3d 762, 772 (2005). The *Shin* court concluded that the relationship between a boarding school that stood in the place of a parent and its student was a "special relationship" that gave rise to a heightened duty. "The next question, then, is whether the heightened duty assumed by Sunriver Prep <u>included a specific duty to avoid the infliction of emotional distress</u>." *Id.* (emphasis added). The court concluded, "[w]e are persuaded that the standard of care applicable to a reasonably prudent boarding school-surrogate parent recognizes the possibility of grave emotional distress as a concern associated with handling a suicidal teenage student in the school's custody." *Id.; see also Curtis v. MRI Imaging Servs. II*, 148 Or. App. 607, 620–22, 941 P.2d 602 (1997), *aff'd*, 327 Or. 9, 956 P.2d 960 (1998) (citing cases

standing for the propositions that neither the loss of one's home in foreclosure nor the loss of a driver's license could support a claim for emotional distress damages, because each loss is an "economic" loss, and explaining that, if the special "legally protected interest" a defendant allegedly invaded is "solely" or even "chiefly" an economic one, an action for emotional distress damages is not permitted).

Here, plaintiff does not allege defendants had a particular duty to protect her emotional health.  Neither does plaintiff assert any facts supporting that defendants' alleged conduct invaded the kind of legally-protected interest that permits recovery of emotional distress damages absent a physical injury.  Without allegations that defendants engaged in the type of harassing, abusive conduct prohibited by several FDCPA provisions, *see* 15 U.S.C. 1692d(1)-(5); 15 U.S.C. 1692e(4), (7), emotional distress damages are not recoverable.

Ms. Loewen claims she experienced some "anxiety," "concern," and "anger as a result of defendants' collection activities.  There is no allegation of fact from which it can be fairly inferred that plaintiff's emotional distress was "grave" or "serious," as Oregon law requires. *Hammond*, 312 Or. at 27.  Indeed, Ms. Loewen does not allege any type of injury that has been historically recognized by the common law or by statute in Oregon; nor does the language of the FDCPA indicate that when Congress provided for the recovery of "actual damages" it intended to create a new species of injury-in-fact that had previously not been recognized.  Even if Congress did intend to permit debtors to pursue FDCPA claims based on purely technical violations of the statute, *Spokeo* makes clear that a debtor must still have suffered an actual injury before she may assert a claim under the FDCPA.

If feeling aggrieved sufficed to create an "injury-in-fact" following a purely technical violation of a statute, the "injury-in-fact" requirement would be rendered null.  Similarly, merely being sent a letter, or named in a lawsuit, has no historical basis for serving as an "injury-in-fact."  Ms. Loewen fails to allege facts sufficient to show that she suffered the concrete harm

required to confer standing on her to assert any legal claims against either defendant, and her claims should be dismissed for lack of jurisdiction.

### 3. Ms. Loewen's claims should be dismissed with prejudice because there is no set of facts Ms. Loewen can plead that confer standing on her.

The Loewen Collection Suit was dismissed before Ms. Loewen filed an appearance, and she does not allege that she suffered economic or other legally-cognizable damages of any kind. The most Ms. Loewen alleges is that defendants' collection attempts upset her somewhat – they caused her anxiety, concern and, eventually, anger.  However, there is no indication that Ms. Loewen's distress was sufficiently severe so as to give rise to standing.

In Oregon, absent wrongful conduct or prosecution in the face of certain defeat, filing a lawsuit does not cause a legally cognizable injury.  *See e.g. Blandino v. Fischel*, 179 Or. App. 185, 189, 39 P.3d 258, 261 (2002) (a wrongful initiation of civil proceedings claim requires proof of both the absence of probable cause to prosecute the action and the existence of malice.)  The mere sending of a non-abusive, non-threatening, non-misleading letter - which the FDCPA permits - also does not cause any legally-cognizable harm in Oregon.

On July 13, 2016, defense counsel conferred with plaintiffs' counsel about a potential motion to dismiss the Complaint for lack of standing.  Decl. Kelly F. Huedepohl, ¶ 2, Ex. A. Plaintiffs' counsel agreed to amend the complaint to allege all facts plaintiffs will rely on to support constitutional standing in light of the *Spokeo* decision.  Huedepohl Dec. ¶ 2, Ex. A.  The Amended Complaint was the result of that conferral.  While plaintiff has expanded the description of the Ms. Loewen's feelings that resulted from defendants' collection efforts, there is no allegation of injury recognized by the law – no claim of economic loss, no claim of significant emotional distress that required professional treatment or significantly interfered with Ms. Loewen's ability to engage in the daily routines of her life, no claim of any lost opportunity, no property damage – to support a claim that Ms. Loewen suffered any injury-in-fact as a result

of defendants' alleged conduct.  Ms. Loewen's interactions with defendant GAT were apparently professional and respectful at all times, and there is no indication that she interacted with defendant Cascade at all.

Ms. Loewen experienced exactly the debt-collection experience the FDCPA seeks to achieve.  As a result, she suffered no legally-cognizable harm and, therefore, she has no Constitutional standing to bring any claims against defendants.

## II.    The Court should dismiss Ms. Loewen's claims because she fails to state any claim upon which relief can be granted.

### 1.    Legal Standard.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *see also* FED. R. CIV. P. 12(b)(6).  The allegations in the operative complaint must give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  *Twombly,* 550 U.S. at 555 n. 3;  FED. R. CIV. P. 8(a).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief." ' " *Id.* (quoting *Twombly*, 550 U.S. 544 at 556–557 (internal citations omitted)).

The tenet that the court must accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678.

   **2. Ms. Loewen fails to state a claim upon which relief can be granted, and her claims against both defendants should be dismissed.**

   Ms. Loewen makes only the following allegations to support her claim that defendants violated the FDCPA: (1) GAT sent her a letter to collect on a debt more than four years after she defaulted on the debt, Am. Compl. ¶¶ 17, 27; (2) Defendants sued Ms. Loewen to collect the amount of the debt she owed more than four years after she defaulted on the debt, Am. Compl. ¶¶ 19, 28; and (3) defendants "knew or should have known" that the statute of limitations had run on her debt at the time they filed the lawsuit. Am. Compl. ¶ 28. The Amended Complaint fails to allege that a four-year statute of limitations governed the Loewen Collection Suit, although that contention may fairly be inferred from the Amended Complaint. However, Ms. Loewen does not allege the source of the four-year statute of limitations. Defendants understand Ms. Loewen believes the four-year U.C.C. Article 2 statute of limitations, which governs actions on a contract for sale, applied to the deficiency balance she owed after her vehicle was repossessed and sold. *See* Or. Rev. Stat. § 72.7250 (1).

   **a. Ms. Loewen does not allege any fact to support an inference that, at the time of defendants' collection efforts, her debt was clearly barred by the applicable statute of limitations.**

   Setting aside the issue of what limitations period actually governed the collection of her deficiency balance, Ms. Loewen does not allege any facts to support her conclusion that defendants violated the FDCPA. Specifically, she alleges no facts whatsoever to support her conclusory allegation that defendants "knew or should have known" that the statute of limitations had expired on an action to collect Ms. Loewen's defaulted debt. For example, there

are no facts alleged that plausibly suggest any wrongdoing on the part of defendants, or that defendants' actions occurred in the face of a clearly-applicable four-year statute of limitations. *See generally* Pls.' Am. Compl.  Absent any such allegation, plaintiff fails to state a claim that defendants violated the FDCPA. *Cf. Kimber v. Fed. Fin. Corp.*, 668 F. Supp. 1480 (M.D. Ala. 1987).  Plaintiff's conclusory allegation is insufficient to support a claim for relief. *Iqbal,* 556 U.S. at 678.

Although Ms. Loewen claims that defendants' conduct violated numerous sections of the FDCPA, Am. Compl. ¶¶ 27–28,[1] none of the referenced provisions establish a statute of limitations for debt collection or prohibit filing a lawsuit after the statute of limitations has expired.  In the absence of any direct prohibition within the statute, plaintiff must allege facts to bring her claims within the FDCPA's broader "catch-all" provisions to state a claim for relief.

There are cases in which the filing of a time-barred debt has been held to violate the FDCPA.  In *Kimber*, for example, the district court applied the standard for sanctions under Rule 11 of the Federal Rules of Civil Procedure to hold that an attorney who filed a debt-collection suit violated FDCPA subsections 1692f, 1692e(2)(a), and 1692e(10) where there was "no question" that the debt at issue was outside both of the two potentially-applicable statutes of limitations at the time the lawsuit was filed.  *Id.*  To determine whether the plaintiff in *Kimber* could succeed on her FDCPA claim, the court noted, "[s]anctions against attorney and client under [Rule 11] have been imposed where the attorney *knew or should have known* a claim was time-barred.") (emphasis added).  Rule 11 independently prohibited the defendant's conduct, which brought the conduct within the FDCPA provisions prohibiting "unfair" conduct, 15 U.S.C. § 1692f; prohibiting misleading statements concerning the "legal status" of any debt; 15 U.S.C. § 1692e(2)(A) and prohibiting the use of any deceptive means to attempt to collect any debt.  15 U.S.C. § 1692e(10).

---

[1] The portions of the FDCPA Ms. Loewen claims defendants violated are set out in Appendix A.

Here, as described in detail at section II.3 *infra*, defendants' collection efforts at issue in this matter *were* timely under one of the two limitations periods that potentially applied to Ms. Loewen's debt. This materially distinguishes Ms. Loewen's claims from those asserted in *Kimber* and in other cases addressing time-barred debts under the FDCPA, and the difference prevents Ms. Loewen from stating a claim for relief.

A debt collector does not violate the FDCPA by pursuing a claim where the outcome of the claim is governed by an open question of state law, even if a state court rules against a debt collector in a collection suit. *See Heintz v. Jenkins*, 514 U.S. 291, 296, 115 S. Ct. 1489, 1491, 131 L. Ed. 2d 395 (1995) ("we do not see how the fact that a lawsuit turns out ultimately to be unsuccessful could, by itself, make the bringing of it an 'action that cannot legally be taken'" under 15 U.S.C. § 1692e(5)). Thus, something more must be alleged to state a claim for relief than a bare assertion that a collection lawsuit would not have prevailed.

Ms. Loewen's assertion that defendants "knew or should have known" that a question of state law would be resolved against them in the Loewen Collection Lawsuit is conclusory, and is not entitled to be taken as true for purposes of resolving these Motions. Moreover, the Supreme Court has rejected the contention that the FDCPA penalizes debt collectors for no reason other than that they ultimately lost at the state-court level. *Heintz,* 514 U.S. at 296. Ms. Loewen fails to allege sufficient facts to support a claim for relief, and her claims should be dismissed.

### b.  Section 1692d did not prohibit defendants' alleged collection efforts.

Ms. Loewen alleges that defendant's conduct violated section 1692d of the FDCPA, which prohibits debt collectors from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person." Pls'. Am. Compl. ¶¶ 27–28; *see* 15 U.S.C. § 1692d(1)–(6). First, Ms. Loewen does not claim that defendants violated any of section 1692d's specifically-enumerated prohibitions. Pls'. Am. Compl. ¶¶ 27–28. Those provisions—which prevent debt collectors from threatening physical violence (subsection 1), using obscene or

profane language (subsection 2), publishing lists of consumers who allegedly refuse to repay debts (subsection 3), advertising debt for sale as a coercion tactic (subsection 4), repeatedly calling a person with the intent to annoy or harass the person (subsection 5) and placing telephone calls without disclosing the caller's identity (subsection 6)—have nothing in common with Ms. Loewen's allegations.  According to the Amended Complaint, defendants did nothing more than: (1) send a letter demanding plaintiff pay her debt and implying Cascade would file suit; (2) speak with plaintiff about her debt when she called GAT to inquire about the letter; (3) send plaintiff information about her debt to validate it; and (4) file suit to collect on plaintiff's debt.  Pls.' Am. Compl. ¶¶ 16–20.

The complained-of conduct also would not have "the natural consequence" of harassing, oppressing, or abusing a person under 1692d's catch-all provision.  If the catch-all provision *could* be read to embrace defendants' alleged conduct, that provision would both violate the First Amendment and would render section 1692d void for vagueness.  *See* sections II.4 and II.5 *infra*.

### c.  Section 1692e did not prohibit defendants' alleged collection efforts.

Ms. Loewen next alleges that defendant's conduct violated section1692e of the FDCPA, which prohibits a debt collector from using any "false, deceptive, or misleading representation or means in connection with the collection of any debt."  Ms. Loewen claims defendants violated the 1692e generally, and also specifically violated subsections 1692e(2), (5), (9), and (10).  As discussed below, plaintiff fails to allege facts in support of her contentions.

**Section 1692e(2) prohibits "The false representation of**:

(A)    the character, amount, or legal status of any debt; or

(B)    any services rendered or compensation which may be lawfully received
        by any debt collector for the collection of a debt."

**Section 1692e(5) prohibits**:

The threat to take any action that cannot legally be taken or that is not intended
to be taken.

**Section 1692e(9) prohibits**:

The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.

**Section 1692e(10) prohibits**:

The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

With respect to the specifically-identified subsections of 1692e, plaintiff alleges no factual or legal basis for claiming that defendants made any false representation to plaintiff at any time in connection with her debt. She does not identify any source of law outside the FDCPA that rendered the defendant's conduct false or misleading. There is no allegation that defendant's communications wrongfully simulated a government document, or wrongfully indicated, for example, that a decree or judgment had been entered against plaintiff. Plaintiff's allegations do not form a plausible claim that defendants' conduct violated the identified provisions of 1692e.

Plaintiff's allegations are also insufficient to state a claim that defendants' used any "false, deceptive, or misleading representation or means in connection with the collection of any debt." As with section 1692d, if section 1692e's catch-all provision could be read to embrace defendants' alleged conduct on the facts of this case, that provision would violate the First Amendment and would render section 1692e void for vagueness. *See* sections II.4 and II.5 *infra*.

**d. Section 1692f did not prohibit defendants' alleged collection efforts.**

Ms. Loewen finally alleges that defendant's conduct violated section1692f of the FDCPA, which prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." Ms. Loewen alleges defendants violated section 1692f generally, and subsection 1692f(1) specifically.

Section 1692f(1) prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly

**DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF LOEWEN'S CLAIMS - Page 16**
3:16-cv-00744-AC
Doc No. -902138

authorized by the agreement creating the debt or permitted by law." This section is directed solely to the amount a debt collector attempts to recover on the debt, and says nothing about the method by which the collection is pursued. Ms. Loewen does not allege defendants sought to collect more than she owed. *See generally* Pls.' Am. Compl.

As with sections 1692d and 1692e, the catch all provision of section 1692f is broadly worded. It forbids the use of "unfair or unconscionable means to collect or attempt to collect any debt." There is nothing "unfair or unconscionable" about collecting on a debt consistent with the statute of limitations that may reasonably be applied to the debt. *See* section II.3 *infra*. Also, as with sections 1692d and 1692e, if 1692f's catch-all provision could be read to embrace defendant's conduct, that provision would both violate the First Amendment and would render section 1692d void for vagueness. *See* sections II.4 and II.5 *infra*.

Ms. Loewen fails to identify any provision of the FDCPA that precludes a debt collector from filing a collection lawsuit where the resolution of the lawsuit turns on an open question or uncertain application of state law, and defendant is aware of none. Neither does plaintiff allege any non-conclusory fact asserting - or from which it can be inferred - that the law in Oregon clearly imposed a four-year statute of limitations on an action to collect Ms. Loewen's debt. The allegations of fact in the Amended Complaint, taken as true, are insufficient to support Ms. Loewen's claim that defendants' alleged conduct violated the FDCPA. Because Ms. Loewen's allegations arise solely from the unsupported assertion that her debt was outside the limitations period during the time defendants attempted their collection efforts, each and every one of Ms. Loewen's claims should be dismissed.

**3.  Ms. Loewen's claims should be dismissed with prejudice because plaintiff's claims do not entitle her to relief under the FDCPA.**

Ms. Loewen does not allege that defendant's collection efforts were performed in contravention of a clear four-year statute of limitations. *See generally* Pls.' Am. Compl.

Defendants are aware of no Oregon appellate case that has ever held that the four-year statute of limitations governing sales contracts applies to actions for a deficiency judgment following the repossession of collateral in a secured transaction, as occurred in Ms. Loewen's case.  Ms. Loewen fails to plead any fact to support an FDCPA violation predicated on the theory that defendants knew or should have known that a four-year statute of limitations applied. Defendants request Ms. Loewen's claims be dismissed with prejudice because, in light of the State of Oregon's law on this issue, repleading would be futile.  Leave to amend should be granted only "when justice so requires."  Fed. R. Civ. P. 15(a)(2).

As explained below, the question of whether a four-year or six-year statute of limitations governed Ms. Loewen's claims is an open question of law in Oregon.  If the longer six-year limitations period applied, defendants' alleged collection efforts were timely.  Because the question of which statute of limitations governed the collection of Ms. Loewen's account is an open one under Oregon law, there is no legal basis that precluded defendants from attempting to collect Ms. Loewen's debt, by letter or by lawsuit.  Therefore, there is no set of facts Ms. Loewen can plead that will entitle her to relief under the FDCPA, and her claims against defendants should be dismissed with prejudice.

The argument that a six-year statute of limitations applied to Ms. Loewen's deficiency balance can be elucidated using only the allegations in plaintiffs' Amended Complaint, taken as true, and the public laws of Oregon, which this Court may judicially notice, FED. R. EVID. 201(b)(2); to wit:  In Oregon, both the statute of limitations for contracts generally, as well as the limitations period for statutory causes of action, is six years.  Or. Rev. Stat. § 12.080 (1), (2).  As Ms. Loewen acknowledges, defendants' efforts to collect on her defaulted debt occurred after the vehicle that served as collateral for the debt was repossessed.  Am. Compl. ¶ 16.  Oregon has adopted Article 9 of the Uniform Commercial Contracts Code, which governs secured transactions. Or. Rev. Stat. § 79.0101 *et seq.*

**DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF**
**LOEWEN'S CLAIMS - Page 18**
3:16-cv-00744-AC

Article 9 provides the default rules for proceeding following the sale of a secured transaction if the parties' contract does not specify the exact procedure to be followed. Many of Article 9's provisions are mandatory and not waivable. *See* Or. Rev. Stat. § 79.0602 (enumerating clauses that the parties may not avoid by contracting around them). Notably, Article 9 grants secured parties the right enforce contract obligations, even if the parties' contract does not grant the secured party the right to compel enforcement. Or. Rev. Stat. § 79.0607 ("If so agreed, *and in any event after a default*, a secured party . . . May notify an account debtor . . . to make payment or otherwise render performance to or for the benefit of the secured party," and "May enforce the obligations of an account debtor ") (emphasis added). Following the disposition of collateral, under Article 9 the debtor is liable to the secured party for any deficiency owed pursuant to the original obligation. Or. Rev. Stat. § 79.0615 (4). Finally, Article 9 enumerates the secured party's rights to a remedy after the debtor defaults, and expressly permits the secured party to reduce a claim to judgment using "any available judicial procedure." Or. Rev. Stat. § 79.0601.

In short, while the original contract will establish the amount of a debtor's obligation under the terms of the contract, if the debtor defaults on the contract and the holder of the security interest exercises the remedy of repossession and disposition, the common-law remedies to enforce the contract are supplanted by the statutory remedies available under Article 9. The action is no longer one to enforce the terms of the contract, but is one to enforce the statutory right to recover the deficiency balance.

Because the secured party's remedy following the repossession of collateral is governed by the terms of the statute - not by the terms of the parties' contract, and not by the common law that developed to govern the rights and responsibilities of contracting parties - it is subject to a six-year statute of limitations. Or. Rev. Stat. 12.080(2). There is no allegation in the Amended Complaint to support an inference that defendants' collection efforts occurred more than six-

years after Ms. Loewen defaulted on her debt.  *See* Am. Compl. ¶ 16 (Ms. Loewen defaulted on her debt "sometime before January 31, 2010,"), ¶ 17 (Ms. Loewen received a letter from GAT on August 3, 2015, less than six years after January 31, 2010), ¶ 19 (the Loewen Collection Suit was filed on October 29, 2015, less than six years after January 31, 2010).

To be sure, the question of which statute of limitations governs a suit for a deficiency balance following the repossession and sale of collateral has never been decided by the Oregon appellate courts.  At some point the question may be resolved, and it is possible the Oregon appellate courts will determine that the four-year statute of limitations applies.  However, the argument that the longer statute should apply to the security portion of a sale has been accepted by at least one sister state interpreting its own U.C.C. provisions in circumstances identical to the case at bar.  *N. Carolina Nat. Bank v. Holshouser*, 38 N.C. App. 165, 169, 247 S.E.2d 645, 647 (1978).  In that case, the North Carolina Court of Appeals declined to find that the four-year statute of limitations governing contracts for sale applied to the deficiency action.  *Id.*  The fact that another state has interpreted the same section of the Article and concluded that the U.C.C. limitations period applicable to contracts for sale does not govern actions for a deficiency judgment forecloses any argument Oregon courts will necessarily find it applies.

North Carolina's interpretation is particularly relevant in Oregon, where the Oregon Supreme Court has already held that an action to recover a surplus is governed by the longer six-year statute of limitations.  *Chaney v. Fields Chevrolet Co.*, 264 Or. 21, 24, 503 P.2d 1239, 1240 (1972).  In addition, the *Holshouser* decision was based, in part, on North Carolina's long history of treating a deficiency judgment as an action separate and apart from an action brought to enforce the terms of the related sales contract.  38 N.C. at 170–71.  Similarly, the Oregon legislature for many years expressly treated an action to recover a deficiency balance as a qualitatively different cause of action than one brought to enforce the underlying sales contract.

From 1971 to 1999 an action to recover a deficiency balance following the repossession and sale of an automobile was subject to its own statute of limitations, and was not subject to the four-year statute of limitations that applies to contracts for the sale of goods.  *Former* Or. Rev. Stat. § 83.830 (the "Anti-Deficiency Statute").  When it passed the Anti-Deficiency Statute, the legislature required a secured party to elect one of two options: the secured party could either repossess the collateral, in which case it forfeited any action for a deficiency valued at less than $700 and was required to bring the deficiency action within 90 days, or the secured party could bring an action for the value of the amount owing an unpaid under the contract, and, if a judgment was entered, the secured party forfeited the right to repossess the collateral.  1971 Or. Laws ch. 744 § 3 (codified at *former* Or. Rev. Stat. § 83.830).

The Anti-Deficiency Statute was amended four times over the course of its twenty-eight year history to increase the amount protected from recovery or to alter the limitations period. 1973 Or. Laws ch. 350 § 1; 1981 Or. Laws ch. 573 § 3; 1983 Or. Laws ch. 739 § 1; 1987; Or. Laws ch. 479 § 1.  The statute was repealed in 1999.  1999 Or. Laws ch. 240 § 1.

The Anti-Deficiency Statute never provided a specific limitations period for an action on the contract rather than an action for a deficiency following the repossession and sale of the collateral.  During the nearly thirty-year history of the Anti-Deficiency Statute the legislature treated the causes of action as separate; that is, an action for the balance on a contract that did not involve the repossession of the underlying collateral was treated as a different kind of action than an action for a deficiency balance following the repossession and sale of the securing collateral. The repeal of the Anti-Deficiency Statute did not alter the fundamental differences between the two types of actions.

In *Chaney*, the most analogous case of which defendants are aware, the Oregon Supreme Court held that the longer six-year statute of limitations applied to actions for a surplus.  264 Or at 25.  The *Chaney* court was not asked to decide what statute applied to an action for a

deficiency balance.  *See generally Id.*  The court indicated in dicta that the shorter four-year statute would apply to an action for "part of the purchase price," without clarifying whether it intended to encompass actions for a deficiency judgment within its statement.  *Id.* at 24.

When considering the relevance of the *Chaney* dicta, is worth noting that the events underlying the *Chaney* case occurred before the Anti-Deficiency Statute was enacted, and the *Chaney* court did not address the statute.  *See generally id.* (the Court of Appeals case was argued and submitted on June 3, 1970, before the Anti-Deficiency Statute was passed).  There is no indication the *Chaney* court was aware the Oregon Legislature had recently concluded that actions for the purchase price should be treated differently than actions to recover a deficiency balance following a repossession of collateral.  *See generally id.*

*Chaney's* found it "apparent from the statute that plaintiff [the debtor] was entitled to the surplus even though the contract had been silent concerning the matter and that the statute is the real source of plaintiff's right rather than the contract of sale."  That rationale applies equally to the secured party's right to recover a deficiency, which also exists even if the contract is silent concerning the matter.  *Id.* at 24; Or. Rev. Stat. § 79.0615(4)(b).

In light of the legislation surrounding actions to recover deficiency balances, *Chaney* at most offers some indication of what the Oregon Supreme Court might have decided in 1972 based on the pre-1971 version of Article 9.  *Chaney* is of very limited value today in terms of predicting whether the Oregon courts will determine that an action for a deficiency balance is an action arising from the contract for the sale of goods and governed by a four-year statute of limitations, *See* Or. Rev. Stat § 72.7250(1), or is a statutory cause of action governed by a six-year statute of limitations.  *See* Or. Rev. Stat. § 12.080(2).

The particular question of law about the statute of limitations that applies to actions for a deficiency balance is acknowledged to be an open one by several Oregon State Bar publications, and at least one such publication suggests that it is likely subject to the longer six-year

limitations period.  According to *Consumer Law in Oregon*, Oregon State Bar Publication,

§ 10.6-6 (2013 rev.), following the repeal of Oregon's Anti-Deficiency Statute in 1999,

"Consumer debtors are now liable for the deficiency balance after repossession and sale,

regardless of the amount of the deficiency.  <u>The creditor's claim is presumably subject to a six-</u>

<u>year statute of limitations.</u>" (Emphasis added).[2]

      Similarly, the Oregon "Red Book," a legal publication describing the statutory time

limitations in Oregon also indicates the question is an open one.  *See Oregon Statutory Time*

*Limitations*, Oregon State Bar Publication (2014 ed.) (the "Red Book") § 11.15Q(3).[3]  The Red

Book first directs the reader to *Cheney*, 264 Or 21, for the proposition that an action for a surplus

following the disposition of collateral is governed by a six-year statute of limitations, rather than

the four-year statute that governs sales-of-goods contracts.  *Id.*  Section 11.15Q(3) then cautions:

> CAVEAT: This holding is suspect when the creditor files an action to
> collect on a secured installment sale contract or other sales transaction to which
> Article 9 applies because the four-year statute of limitations set forth in ORS
> 72.7250 clearly governs the transaction.

> QUERY: Would the result have been the same if the creditor were suing
> the debtor for a deficiency judgment?

      In other words, the Red Book explains that an action to collect on a sales contract is

governed by a four-year statute of limitations.  An action to collect a surplus following the sale

of collateral is governed by a six-year statute of limitations.  But an action to collect on a

deficiency following the sale of collateral does not necessarily fall under one statute or the other,

and there is presently no definitive answer under Oregon law as to which statute of limitations

governs such an action.

---

[2] A copy of section 10.6-6 as it appeared on the Oregon State Bar's website as of August 29,
2016, is attached as Appendix B.

[3] A copy of section 11.15Q(3) as it appeared on the Oregon State Bar's website as of August 29,
2016, is attached at Appendix C.

This Court need not decide, for purposes of defendants' motions, whether Oregon's six-year statute of limitations governed Ms. Loewen's debt.  The question is whether, in light of a good-faith argument that the six-year statute should apply, the FDCPA prohibited defendants from seeking to collect Ms. Loewen's debt within that six-year period but outside the shorter four-year period.  The answer is "no."  The FDCPA does not require debt collectors to abandon arguments in support of favorable interpretations of state law.  It does not compel attorneys and their clients to assume that open questions of law will be resolved against them.  It does not deny them fair access to the courts.  And, as defendants argue at Section II.4 *infra*, even if the FDCPA could be read to embrace the conduct plaintiff describes, the First Amendment would prohibit the enforcement of that provision on these facts.

Given the uncertain state of Oregon law as it applies to the statute of limitations that governed collection of Ms. Loewen's debt, there is no set of facts that plaintiff could plead to state a violation of the FDCPA.  Defendants respectfully move the Court to dismiss Ms. Loewen's claims against GAT and Cascade with prejudice.

**4.  The First Amendment prevents Congress from penalizing parties who file a lawsuit where there is a good-faith argument that the party will prevail.**

At the outset, defendants acknowledge that the language of the FDCPA applies to at least some actions taken by lawyers in the course of litigation.  *See generally Heintz*, 514 U.S. 291; *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 130 S. Ct. 1605, 176 L. Ed. 2d 519 (2010).  However, while both *Heintz* and *Jerman* addressed whether the language of the FDCPA encompassed claims against lawyers engaged in litigation activities, neither case analyzed whether the First Amendment to the United States Constitution placed limits on Congress's ability to regulate litigation activities through the FDCPA.  *See generally Heintz*, 514 U.S. 291 (the Court's opinion does not address or mention the First Amendment); *see also Jerman*, 559 U.S. at 604 n.21 (specifically declining to consider whether the First Amendment

limits application of the FDCPA to litigation activities because that issue was not raised or addressed by the parties). Thus, while the United States Supreme Court has determined that the language of the FDCPA embraces at least some litigation activities, it has not considered whether any limits the FDCPA may impose on those activities exceed Congress's authority as it is limited by the First Amendment.

The First Amendment protects the rights of citizens to bring their disputes into court for resolution. *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510, 92 S. Ct. 609, 612, 30 L. Ed. 2d 642 (1972) (the First Amendment right to petition the government extends to all branches of the government, including the right of access to courts). To challenge the exercise of that right, a plaintiff must plead and prove that the defendant engaged in "sham" litigation, which is not protected First Amendment conduct. *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60, 113 S. Ct. 1920, 1928, 123 L. Ed. 2d 611 (1993). "Sham" litigation must meet a two-part test: (1) "the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits"; and (2) the lawsuit must have been brought to further wrongful conduct "through the use [of] the governmental process—as opposed to the outcome of that process." *Id.*at 60–61.

Here, Ms. Loewen merely alleges that defendants sued her more than four years after she defaulted on her debt. Her only claimed basis for recovering under the FDCPA is that the statute of limitations had run. However, as discussed at length above, it is far from clear that the applicable statute of limitations had actually expired on plaintiff's debt. In the face of an open question of law, the First Amendment protects the right of potential litigants to bring their disputes before a Court for resolution of the open question. There is no allegation to support any inference that defendants' conduct ran contrary to well-established law, or was brought to further any wrongful purpose.

Defendants contend that Ms. Loewen's allegations fail to state a claim under the FDCPA because the FDCPA does not forbid parties from bringing legitimate disputes to a court for resolution, and does not prohibit a debt collector from filing a lawsuit pursuant to an open question of law concerning the statute of limitations. However, even if one of the FDCPA provisions plaintiff cites could be construed to prohibit filing a claim whose outcome turns on an open question of law, the First Amendment would prohibit that construction from being enforced. Because the First Amendment bars Ms. Loewen's claims, the Court should dismiss her claims with prejudice.

**5. If the FDCPA can be interpreted to embrace defendants' conduct on the facts pleaded in the Amended Complaint, the statute is void for vagueness.**

An "ordinarily intelligent" person reading the FDCPA would not understand that the statute prohibits debt collectors from filing suit to collect on debts where the action would be timely filed under only one of two potentially-governing statutes of limitations. To the extent the FDCPA's provisions could, under any circumstances, be read to embrace such conduct, those provisions are unconstitutionally vague and are void on that basis.

"A statute is void for vagueness when it does not sufficiently identify the conduct that is prohibited." *United States v. Makowski,* 120 F.3d 1078, 1081 (9th Cir.), *cert. denied,* 522 U.S. 1019, 118 S.Ct. 610, 139 L.Ed.2d 497 (1997). Due process requires that a statute must clearly identify the conduct it proscribes. *Kev, Inc. v. Kitsap County,* 793 F.2d 1053, 1057 (9th Cir.1986) (citing *Grayned v. City of Rockford,* 408 U.S. 104 at 108, 92 S.Ct. 2294, 33 L.Ed. 222 (1972)). "A statute must be sufficiently clear so as to allow persons of 'ordinary intelligence a reasonable opportunity to know what is prohibited.' " *Foti v. City of Monlo Park,* 146 F.3d 629, 638 (9th Cir. 1998) (quoting *Grayned,* 408 U.S. at 108, 92 S.Ct. at 2298–99).

The requirement that Congress state any prohibitions with specificity is particularly important in the context of the FDCPA, which "is a strict liability statute." *Gonzales v. Arrow*

*Fin. Servs.*, LLC, 660 F.3d 1055, 1061 (9th Cir. 2011).  Because a plaintiff need not prove intent—or even negligence—to state a claim under the FDCPA, liability attaches even to inadvertent violations.  *See Jerman*, 559 U.S. at 581-583 (a mistaken interpretation of the FDCPA is no defense to liability under the statute).

There are three conditions which, if met, will render a statute void for vagueness and unenforceable:

> Statutes that are insufficiently clear are void for three reasons: (1) to avoid punishing people for behavior that they could not have known was illegal; (2) to avoid subjective enforcement of the laws based on "arbitrary and discriminatory enforcement" by government officers; and (3) to avoid any chilling effect on the exercise of First Amendment freedoms.

*Foti*, 146 F.3d at 638.

Critically, "perhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights. If, for example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499, 102 S. Ct. 1186, 1193–94, 71 L. Ed. 2d 362 (1982).  As discussed at section II.4 *supra*, Ms. Loewen's claims against defendants under the FDCPA implicate the First Amendment right to petition the government.  As a result, the Constitution requires the  FDCPA to be written with a high degree of clarity in order to prevent a chilling effect on lawful conduct.

Plaintiff's argument that the FDCPA can be interpreted to penalize a person for bringing a lawsuit where there is a good faith basis to believe that the claim could prevail demonstrates that the provisions of the FDCPA relied on by plaintiff are unconstitutionally vague and are, therefore, void.  In particular, the first and third elements of an unconstitutional statute exist in the provisions of the FDCPA she relies on.

First, if bringing a lawsuit in good faith, but ultimately losing the claim, creates liability under the FDCPA, people may be punished for behavior they could not have known was illegal. In fact, the FDCPA is unconstitutionally vague to the extent any portion of the statute *could* be read to prohibit the conduct of which Ms. Loewen complains.  The very fact that Ms. Loewen obtained representation in this matter is evidence that the FDCPA is insufficiently precise.  *See* FED. R. CIV. P. 11(b)(2) (when plaintiff's counsel filed the complaint he certified that the claims were warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or establishing new law).

The FDCPA should be scrutinized with particular care because it does not forgive error, or even subject debt collectors to a "reasonableness" standard.  Instead, the FDCPA's provisions must be interpreted through the lens of the "least sophisticated debtor."  *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1171 (9th Cir. 2006).  The FDCPA also imposes "strict liability" on debt collectors, which offers no room for case law interpreting its provisions to develop before its penalties are imposed.  *Gonzales*, 660 F.3d at 1061.

Moreover, although the FDCPA applies to litigation activities and may, therefore, infringe on freedoms protected by the First Amendment, courts nevertheless construe these broad provisions "liberally" in favor of the consumer.  *Clark*, 460 F.3d at01176.  This runs directly contrary to the requirement that regulations which might chill First Amendment activities be stated with heightened specificity.  *See Foti*, 146 F.3d at 638.

In addition, the prohibitions of the FDCPA are written in very broad, sweeping language. The FDCPA penalizes any "false, deceptive, or misleading representation" – whether or not the speaker knew or should have known the representation was false or would deceive or mislead the least sophisticated consumer.  15 U.S.C. § 1692e; *see Clark*, 460 F.3d at 1176 (FDCPA liability attaches even if debt collector did not knowingly or intentionally make any false representation.")  It penalizes conduct that would, as a "natural consequence," "harass, oppress,

or abuse" the least sophisticated consumer, without defining any of those terms. 15 U.S.C. §
1692d. It penalizes any conduct that is "unfair or unconscionable" through the eyes of a least
sophisticated debtor – again, without defining those terms. 15 U.S.C. § 1692d. It prohibits the
"false representation" of the "legal status" of any debt, but does not define "legal status" or
explain what conduct it attempts to proscribe. 15 U.S.C. § 1692e(2)(A). A debt collector may
not take any action "that cannot legally be taken," but Congress did not explain what that phrase
means or define the outer bounds of the conduct it reaches. 15 U.S.C. § 1692e(5).

In short, the FDCPA: (1) uses extremely broad language; (2) to penalize conduct, at least
some of which is or may be protected by the First Amendment; and (3) requires its prohibitions
to be construed broadly *against* the party to be penalized and whose First Amendment activities
are likely to be chilled by the statute. There is simply no reasonable way for a "person of
ordinary intelligence" to know with specificity what conduct will be considered "unfair" to the
"least sophisticated debtor," or will otherwise run afoul of the statutes plaintiff cites. This case is
evidence of the impermissibly amorphous restrictions the FDCPA places on debt collectors,
including on activities that are protected by the First Amendment, and Ms. Loewen's claims
demonstrate that the provisions of the FDCPA on which she relies are void for vagueness. *See
Foti*, 146 F.3d at 638.

### III.    Defendants' Alternative Motions

### 1.    Alternative motion to strike Paragraph 18.

Ms. Loewen claims that after she called GAT concerning the August Collection Letter,
GAT sent Ms. Loewen a "packet of papers, presumably related to the debt," and the "additional
paperwork caused her more anxiety." Am. Compl. ¶ 18. This allegation is irrelevant and
prejudicial, and it should be stricken from the complaint.

The FDCPA anticipates some consumers may dispute some or all of the details of a
purported debt, and makes provision for such disputes. 15 U.S.C. § 1692g. In fact, the FDCPA

*requires* debt collectors to provide debtors with additional information about their debts, if the consumer makes a dispute in writing, in order to empower debtors to evaluate the claims that they owe a debt. 15 U.S.C. § 1692g(a). According to plaintiff's Amended Complaint, GAT provided Ms. Loewen with a packet of information about her debt based on her telephone call to GAT, rather than based on a written dispute. *Id.* at ¶ 18. Assuming plaintiff's allegation is true, GAT may have exceeded the minimum requirements of the FDCPA when it did not require Ms. Loewen to dispute her debt in writing before sending her information to verify the debt. However, Ms. Loewen does not claim that what GAT sent to her was false, misleading, harassing, improper, or anything other than the very materials Congress encourages—and in some instances requires—debt collectors to send to consumers. Paragraph 18 makes irrelevant and prejudicial allegations and should be stricken from the Amended Complaint. FED. R. CIV. P. 12(f)(2).

## 2. Alternative motion to make more definite and certain.

If the Court does not dismiss plaintiff's claims, or dismisses them without prejudice, defendants move the Court to order Ms. Loewen to make her Amended Complaint more definite and certain. Specifically, defendants move the Court to order Ms. Loewen to file a Second Amended Complaint alleging the factual bases for her allegation that, at the time of defendants' alleged conduct, defendants either "knew or should have known" that the Loewen Collection Suit was governed by a four-year statute of limitations. Defendants also move the court to order Ms. Loewen to amend her allegations to allege facts that support her claim that she suffered a constitutional injury-in-fact as a result of defendants' alleged conduct.

## CONCLUSION

Ms. Loewen does not have Article III standing to assert any claims against defendants, because she does not allege that she suffered any legally cognizable injury-in-fact attributable to defendant's conduct. Therefore, her claims must be dismissed. FED. R. CIV. P. 12(b)(1).

In addition, Ms. Loewen fails to state a claim because her allegations against defendants amount to a bare assertion that defendants sought to collect a debt from her outside the statute of limitations.  Ms. Loewen does not allege any facts to support her conclusory allegation that defendants "knew or should have known" that the statute of limitations had expired on her debt. With no factual allegations to support her conclusory allegation, Ms. Loewen's claims must be dismissed for failure to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).

In fact, it is an open question of law in Oregon whether Ms. Loewen's claims are governed by a four-year or a six-year statute of limitations, and defendants had a good-faith basis for asserting that the six-year statute applied to Ms. Loewen's debt.  Thus, any attempt to amend Ms. Loewen's claims will be futile, and her claims should be dismissed with prejudice.

Finally, defendants' conduct was protected by the First Amendment to the Constitution, which bars Congress from penalizing protected activity.  To the extent the FDCPA can be read to penalize the conduct plaintiff complains of, that provision was beyond the authority of Congress to enact and is additionally void for vagueness.

For the foregoing reasons, the Court should dismiss Ms. Loewen's claims in their entirety and with prejudice.

DATED this * day of August, 2016.

KEATING JONES HUGHES, P.C.

*Kelly F. Huedepohl*
Peter Eidenberg, OSB No. 075778
Kelly F. Huedepohl, OSB No. 133896
503-222-9955
Attorneys for Defendants Cascade Capital, LLC and
Gordon Aylworth & Tami, P.C.

**DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF
LOEWEN'S CLAIMS - Page 31**
3:16-cv-00744-AC

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2016, I electronically filed **DEFENDANTS'**

**MOTIONS TO DISMISS PLAINTIFF MARGARET LOEWEN'S CLAIMS** with the

United States District Court for the District of Oregon - Portland Division by using the CM/ECF

system. I certify that the following parties or their counsel of record are registered as ECF Filers

and that they will be served by the CM/ECF system:

>Bret A. Knewtson
>Law Office of Bret Knewtson
>3000 NW  Stucki Place, Suite 230-M
>Hillsboro, OR 97124
>Phone: (503) 846-1160
>Email: bknewtson@yahoo.com
>Of Attorneys for Michael Kaiser and Margaret J. Loewen
>
>John Gear
>John Gear Law Office LLC
>161 High St SE STE 208B
>Salem, OR 97301-3610
>Phone: 1(503) 339-7787
>Email: John@JohnGearLaw.com
>Of Attorneys for Michael Kaiser and Margaret J. Loewen
>
>Mark G. Passannante
>Broer & Passannante PS
>1001 SW Fifth Avenue, Suite 1220
>Portland, OR 97204
>Phone: (503) 294-0910
>Emails: MarkPassannante@msn.com & broerandpassannante@gmail.com
>Of Attorneys for Michael Kaiser and Margaret J. Loewen

DATED this 31st day of August, 2016.

>KEATING JONES HUGHES, P.C.


>*Kelly F. Huedepohl*
>Peter Eidenberg, OSB No. 075778
>peidenberg@keatingjones.com, FAX 503-796-0699
>Kelly F. Huedepohl, OSB No. 133896
>khuedepohl@keatingjones.com, FAX 503-796-0699
>Of Attorneys for Defendants Cascade Capital, LLC and
>Gordon Aylworth & Tami, P.C.

**CERTIFICATE OF SERVICE -** Page 32
3:16-cv-00744-AC